FILED'08 DEC 05 16:04USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KENT E. COFFMAN,                                      Civil No. 07-1082-CL

      Plaintiff,                          REPORT AND RECOMMENDATION


        v.


MICHAEL J. ASTRUE, Commissioner,
Social Security Commission,

      Defendant.


CLARKE, Magistrate Judge.

      Plaintiff Kent E. Coffman brings this action pursuant to section 205(g) of the Social

Security Act, as amended (Act), 42 U.S.C. § 405(g), to obtain judicial review of the

Commissioner's final decision denying plaintiff's claim for social security disability insurance

benefits pursuant to 42 U.S.C. §§ 416 and 423. For the several reasons set forth below, the decision of the Commissioner should be reversed and the matter remanded for benefits.

## BACKGROUND

Plaintiff Kent Coffman filed applications for Title II disability insurance benefits and Title XVI supplemental security income benefits on October 25, 2003. He alleged an onset date of August 25, 2001. (Pl.'s Memo. 1.) The Social Security Administration denied the claim initially and on reconsideration. On October 3, 2005, there was a hearing before an Administrative Law Judge (ALJ), and the plaintiff appeared and testified. The ALJ issued an unfavorable decision on October 6, 2005, finding that the plaintiff was not disabled as defined by the Social Security Act and the Social Security Regulations. The Appeals Council granted review and remanded the case on April 18, 2006, for further administrative proceedings to consider whether the plaintiff had a severe mental impairment. The Appeals Council also ordered the ALJ to obtain a comprehensive neuropsychiatric evaluation. (Tr. 87.) On December 4, 2006, the plaintiff appeared and testified at a hearing. The ALJ then issued his unfavorable decision on January 30, 2007. The Appeals Council denied review of this decision on May 29, 2007. Plaintiff, however, was granted Social Security Insurance Benefits beginning July 18, 2007. (Pl.'s Memo. 2.) Plaintiff seeks an appeal of the unfavorable January 2007 decision.

## STANDARDS

This court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

2 - REPORT AND RECOMMENDATION

Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court considers the record as a whole and weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence. Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).  In the present case, the ALJ found that the plaintiff had not engaged in substantial gainful activity during the period under review.  (Tr. 18.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled.  If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that the plaintiff has severe impairments of mild arthritic spurring of his lumbar spine, consistently high blood pressure, obesity, major depressive disorder, and borderline personality disorder. (Tr. 19.)  Accordingly, the inquiry moved to step three.

Step three focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141. In this case, the ALJ found that plaintiff's impairments, either singly or in combination, were not severe enough to meet, or medically equal to, any of the listed impairments.  (Tr. 18.)

4 - REPORT AND RECOMMENDATION

In step four, the Commissioner determines whether the claimant has the residual functional capacity (RFC) to perform her "past relevant work." 20 C.F.R. § 404.1560(a). The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments. SSR 96-8p. "Past relevant work" refers to work that "was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). It does not consider "off-and-on" work during that period. Id. If he can perform past relevant work, then the Commissioner finds the claimant "not disabled." If the claimant cannot perform past relevant work, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that plaintiff retains an RFC to perform light exertion work activity. (Tr. 20.) The ALJ found that plaintiff could not perform his past relevant work. (Tr. 23.) Accordingly, the inquiry moved to step five.

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the claimant is deemed disabled. Here, the ALJ found that the plaintiff retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy. (Tr. 26.) Therefore, the ALJ found that plaintiff was not under a disability. (Tr. 27.)

### DISCUSSION

Plaintiff asserts that the ALJ incorrectly determined that the plaintiff was not disabled within the meaning of the Social Security Act. The plaintiff argues that the ALJ abused his discretion by failing to base his decision on sufficient and substantial evidence and by not taking into consideration legitimate mental impairments. He argues that the ALJ improperly dismissed

physician testimony, other source testimony, and plaintiff's testimony. Further, he argues that the ALJ improperly determined that plaintiff's impairments do not meet the Listings of Impairments criteria.

### 1. The ALJ Erred by Improperly Dismissing Physician Testimony

Plaintiff argues that the ALJ improperly rejected physician testimony. Controlling weight will be given to a treating physician's opinion on the issues of the nature and severity of a claimant's impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Secretary of HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and convincing reasons for disregarding the opinion. Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984). If a treating or examining physician's opinion is contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for disregarding the opinion of the treating or examining physician. Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th Cir. 1996). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation, and lastly making findings. Cotton, 799 F.2d at 1408;

6 - REPORT AND RECOMMENDATION

Rodriguez, 876 F.2d at 762. An ALJ also errs if he implicitly rejects a doctor's testimony. "ALJ's implicit rejection . . . violates the elementary requirement that ALJ's not only state their findings but explicate the reasons for their decisions." Brown v. Bowen, 794 F.2d 703, 708 (D.C. Cir. 1986). Where the ALJ fails to provide adequate reasons for rejecting the opinion of an examining or treating physician, the court credits that opinion "'as a matter of law.'" Lester, 81 F.3d at 834 (quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989)).

The ALJ improperly rejected Dr. Donohoe's opinion by not giving clear and convincing reasons. Dr. Donohoe was one of the plaintiff's regular physicians from the period of January 2003 until approximately June 2005. His opinion was not contradicted in the record. On several separate medical records, Dr. Donohoe gave his opinion that the plaintiff qualifies for disability. On May 10, 2005, he stated that the plaintiff "is trying for disability . . . . I do believe he qualifies." (Tr. 319.) On June 26, 2004, he expressed, "it is my hope that he will be qualified for disability which seems reasonable in this situation." (Tr. 313.) On August 25, 2004 he described, "Patient is a very good candidate for disability given his persistent moderately severe depression and probable sleep apnea . . . . For both physical and psychiatric reasons, I believe he qualifies for disability." (Tr. 306.) He reiterated his same, unchanged opinion on November 16, 2004: "Patient certainly seems like a good candidate for [disability]." (Tr. 299.) As the plaintiff notes, Dr. Donohoe's opinion was based on "the doctor's familiarity with the [p]laintiff's condition arising from many months as Mr. Coffman's treating doctor." (Pl.'s Memo. 5.)

The ALJ acknowledges that Dr. Donohoe made at least one of these statements, but he finds them "unconvincing." (Tr. 22.) The ALJ suggests that Dr. Donohoe's statements are suspect because Dr. Donohoe did not make "specific recommendations for restrictions on [plaintiff's] ability to

7 - REPORT AND RECOMMENDATION

work." Id. This is the ALJ's primary discussion of Dr. Donohoe's opinions, and this suggestion alone does not suffice for "clear and convincing".

The ALJ also erred when he implicitly rejected the opinions of Drs. Olbrich, Birecree, Rudoff, and Borden. The ALJ does not mention their opinions in the record. These doctors' opinions each separately support the plaintiff's allegations of disability. Dr. Olbrich reported the plaintiff is "significantly disabled by his mental and emotional condition." (Tr. 355.) He referred to the plaintiff's employment history as revealing "symptoms of depression and anxiety have been significant in causing the loss of most of his jobs" and noted the plaintiff's job history of thirteen jobs from 1992 to 2001. Id. Dr. Birecree noted his tearful behavior and significant symptoms of depression, specifically his problems in  memory and concentration. (Tr. 359-59.) Dr. Rudoff concluded that the plaintiff's "severe depression interferes with his ability to improve his physical condition." (Tr. 361.) Lastly, Dr. Borden concluded that while the plaintiff sought help for physical ailments, including sleep apnea, back pain, and other symptoms, "the major problem is depression and mental health issues." (Tr. 367.) "[T]he depression I think is manifestly there. He is disheveled, very sleepy looking.  He gets off the subject very easily.  He has trouble really putting a good coherent story together." (Tr. 368.)

The ALJ erred by not giving substantial evidence to support his determination to reject or ignore the opinions of plaintiff's doctors.  With Dr. Donohoe, he did not provide clear and convincing reasons, and with Drs. Olbrich, Birecree, Rudoff, and Borden he did not even mention them. The court accordingly treats the opinions of these doctors as true. See Lester, 81 F.3d at 834.

## 2. The ALJ Erred in Improperly Rejecting "Other Source" Opinions

The plaintiff argues that the ALJ improperly rejected the opinions of Physician's Assistant Barbara Martin and Psychiatric Mental Health Nurse Practitioner Carol Burkhardt as merely "conclusory" and not supported by other evidence in the case record. (Tr. 22.)

Nurse practitioners and physician's assistant are not "acceptable medical source[s]," 20 C.F.R. § 404.1513(a)(3), but they are "other source[s]" that receive some consideration. 20 C.F.R. § 416.913(d). The ALJ may use evidence from other sources in addition to acceptable medical sources to "show the severity of [the] impairment(s) and how it affects your ability to work . . . ." Id. At a minimum, an ALJ should treat these medical professionals' opinions with as much consideration as a lay witness and give reasons supported by substantial evidence for rejecting it. Vincent on behalf of Vincent v. Heckler, 739 F2d 1393, 1395 (9th Cir 1984). The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

An ALJ may reject opinions that are merely "conclusory" when a doctor or medical professional submits a form without providing any detailed analysis of the plaintiff's condition and diagnosis. Young v. Heckler, 803 F.2d 963, 967 (9th Cir. 1985). The conclusory opinion that the Ninth Circuit addressed in Young v. Heckler was a check-the-box insurance form. The doctor's opinion was not only inconsistent with other medical opinions on record but it was also internally contradictory. Id.

As both Ms. Burkhardt and Ms. Martin are "other sources" their opinions can only be rejected when the ALJ provides substantial evidence for doing so. The ALJ argues that their opinions are "merely brief and conclusory," containing "no real description of findings" and refuses to "afford

them significant weight." He argues there is a lack of clinical and laboratory diagnostic studies to substantiate the severe restrictions that they recommend. (Tr. 22.)

The questionnaires that Ms. Martin and Ms. Burkhardt completed are attorney created, but as completed, they are not "merely brief and conclusory." While the questionnaires solicited responses by "check the box," they also provided an option for the medical professionals to comment and support their selections. (See tr. 344-350.)   Their opinions are supported by evidence in the record, which is sufficient when an individual alleges a mental disability: "When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989). While Ms. Burkhardt is not a psychiatrist, she is a Psychiatric Mental Health Nurse Practitioner and is trained in the field of psychopathology.

Further, both professionals worked at the Old Town Clinic with Dr. Donohoe. All three professionals have similar opinions and conclusions as to the plaintiff's condition. The court has previously determined that the ALJ improperly dismissed Dr. Donohoe's opinion. Dr. Donohoe's records are not inconsistent with their findings of depression. (See tr. 299-319.)

The court should credit the other source opinions because the ALJ has not provided substantial evidence for rejecting them.

**3. The ALJ Erred in Improperly Rejecting the Plaintiff's Testimony**

The ALJ did not accept the plaintiff's testimony.  In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen, 80 F.3d at 1281; SSR 96-7p. The first stage is the Cotton test. Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be

expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged. Id.

Under the second part of the analysis, the ALJ must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms, evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. See SSR 96-7p. Unless affirmative evidence of malingering is suggested in the record, the ALJ can reject a claimant's symptom testimony regarding the severity of symptoms "only if he makes specific findings stating clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; Dodrill, 12 F.3d at 918; Carmickle v. Comm'r, Soc. Security Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (and cases cited). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence suggests that the testimony is not credible. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. Cotton, 799 F.2d 1403.

In determining a claimant's credibility the ALJ may consider, for example:

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . . Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284; SSR 96-7p; 20 C.F.R. §§ 404.1529(c); 416.929(c).

11 - REPORT AND RECOMMENDATION

The Ninth Circuit explains that the ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once that determination is made, the court defers to the ALJ. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). However, the court may also credit the plaintiff's testimony as true and remand for benefits where there are no outstanding issues that must be resolved and it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's testimony were credited. Varney v. Sec'y of Human Servs., 859 F.2d 1396, 1401 (9th Cir. 1987).

The ALJ found plaintiff's allegations "as to intensity, persistence and limiting effects of [his] symptoms are disproportionate and not supported by the objective medical findings or any other corroborating evidence." (Tr. 20-21.) He also doubted the plaintiff's explanation of his relationship with his landlady and found it "hard to believe." (Tr. 21.) Reviewing the plaintiff's list of daily activities, he concluded he "may still be capable of performing the basic demands of competitive, renumerative, unskilled, work on a sustained basis." Id. He summarized that he does not find the plaintiff "entirely reliable" and based this conclusion in part on the "evasive or tangential" responses the plaintiff gave during the hearing. Id.

The ALJ also referenced two doctor's opinions to support his conclusion to reject plaintiff's testimony. Dr. Ellison reported that the plaintiff was alert and attentive with normal communication and also diagnosed "magnification." (Tr. 379-80.) Dr. Givi described the plaintiff as a "questionable historian . . . [with] a quality to his history that seemed exaggerated or embellished." (Tr. 373.)

12 - REPORT AND RECOMMENDATION

While the "evasive" answers might be problematic if the plaintiff only claimed physical impairments, the record illustrates that these answers are likely symptoms of the plaintiff's mental impairments. For example, the ALJ commented on the plaintiff's evasive responses and poor personal history; however, Dr. Borden's opinion described the plaintiff's depression and noted one indication of his symptoms: "he has trouble really putting a good coherent story together." (Tr. 368.)

Similarly, evidence of plaintiff's activities of daily living may not be dispositive in describing his capabilities either. "Mere participation in an activity does not, of itself, reflect upon the degree of impairment severity. This can only be measured by considering the quality, independence, frequency, and appropriateness of the activities." SSR 83-15 at *2. The ALJ does not discuss these factors in his opinion nor does he set forth with "specificity" which allegations he discredits. Lester, 81 F.3d at 834. For example, many of the ALJ's problems with the plaintiff's testimony are related to his physical complaints and not evidence of mental impairments. (See Tr. 18-19.)

The ALJ does not provide clear and convincing reasons for rejecting the plaintiff's testimony as it relates to the plaintiff's mental health impairments.

**4. The ALJ Erred When He Found That Plaintiff Did Not Have a Severe Impairment That Meets the Listing of Impairments**

Plaintiff argues that the ALJ erred when he determined that the plaintiff did not meet the criteria of the Listings of Impairments (Listings) for 12.04 Affective Disorders.

When evaluating mental impairments, the Commissioner considers "all relevant and available clinical signs and laboratory findings, the effects of [plaintiff's] symptoms, and how [plaintiff's] functioning may be affected . . . ." 20 C.F.R. § 404.1520a(c)(1). To rate the degree of the functional limitation, the Commissioner looks to "the extent to which your impairment(s) interferes with

[plantiff's] ability to function independently, appropriately, effectively, and on a sustained basis."

Id. § 404.1520a(c)(2). Listing 12.04 provides:

12.04 Affective disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
    1. Depressive syndrome characterized by at least four of the following:
        a. Anhedonia or pervasive loss of interest in almost all activities; or
        b. Appetite disturbance with change in weight; or
        c. Sleep disturbance; or
        d. Psychomotor agitation or retardation; or
        e. Decreased energy; or
        f. Feelings of guilt or worthlessness; or
        g. Difficulty concentrating or thinking; or
        h. Thoughts of suicide; or
        i. Hallucinations, delusions, or paranoid thinking; or
    2. Manic syndrome characterized by at least three of the following:
        a. Hyperactivity; or
        b. Pressure of speech; or
        c. Flight of ideas; or
        d. Inflated self-esteem; or
        e. Decreased need for sleep; or
        f. Easy distractibility; or
        g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
        h. Hallucinations, delusions or paranoid thinking; or
    3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
AND
B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;
OR

14 - REPORT AND RECOMMENDATION

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App.1, 12.04.

"Activities of daily living include activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." Id. 12.04C.1. "Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  Social functioning includes your ability to get along with others . . . ." Id. 12.04C.2.  "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in a work setting." Id. 12.04.C.3.  "Marked" refers not to a specific number but to an assessment of the nature and overall degree of interference with social functioning or concentration, persistence, or pace. Id. 12.04C.2 & 3.

Meeting Listing criteria creates a presumption of disability, provided the durational requirement is also met.  When an individual's impairment meets or equals the level of severity, "disability will be found on the basis of the medical facts alone in the absence of evidence to the contrary . . . ." SSR 86-8 at *3. The Commissioner considers all evidence in the case record about

the plaintiff's impairments and the effects on the individual that are relevant to the finding. 20 C.F.R. § 404.1526(c).

The ALJ determined that the plaintiff's impairments meet the descriptive 12.04A criteria listed in Section 12.04, but he determined that the plaintiff did not meet the requisite criteria of either 12.04B or 12.04C. (Tr. 20.) Specifically, he found that the plaintiff had only moderate restrictions of his activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. Id. He concluded that the plaintiff's impairment's severity did not meet the severity under the Listings.

Upon reviewing the record, the court disagrees. The records from his medical providers as well as the hearings display that he has marked difficulties in social functioning and in maintaining concentration, persistence, and pace. As discussed previously, the ALJ improperly rejected and wholly disregarded relevant testimony from plaintiff's medical and mental health providers and from the plaintiff himself. Giving these opinions their proper weight in the record reveals that the plaintiff exhibits these symptoms and qualifies under the Listings.

Plaintiff's behaviors at his doctor's appointments and at hearings demonstrate his challenges in interacting independently and appropriately with others. He is frequently tearful and carries with him two skulls he describes as his only friends, which he reportedly created twelve years ago. He informed Dr. Givi, "I use these as my friends." (Tr. 371.) Dr. Givi reported that plaintiff began to cry immediately upon entering the office and was intermittently labile throughout the evaluation. (Tr. 371.) The skulls continued to be present in the plaintiff's life. He brought them with him and discussed them with the ALJ at the October 2005 hearing and to Dr. Birecree in November 2005. (Tr. 359, 485.) Dr. Birecree explained in February 2006, "he was quite tearful and brought all his

16 - REPORT AND RECOMMENDATION

records and his two skeleton heads in a plastic bag. He reports, 'they are my only friends, I am so lonely.'" (Tr. 364.) These behaviors clearly display a marked interference in his ability to function. Both Ms. Burkhardt and Ms. Martin confirmed that he has marked difficulties in their completed questionnaires. (Tr. 346, 350.) Dr. Givi made the general observation that "the pervasive nature of [plaintiff's] psychological symptoms will make gainful employment difficult. Currently, his depressive symptoms are likely to undermine his ability to perform on the job, and his borderline personality structure will make employment and co-worker relationships more difficult." (Tr. 374.) Though Dr. Givi suggested that any possible work must be in a highly structured environment, he cast into doubt the option of working by noting further that "the client would need supervision to manage any funds that might be granted by the Social Security Administration." (Tr. 374.)

The medical records also confirm that the plaintiff has marked difficulties in maintaining concentration, persistence and pace. Dr. Birecree concluded that the plaintiff has "significant concentration and memory problems and atypical symptoms of depression, including increased sleep and weight gain." (Tr. 359.) Ms. Martin and Ms. Burkhardt also concluded on their questionnaires that the plaintiff had marked difficulties in this area. (Tr. 346, 350.)

The plaintiff meets two of the 12.04B criteria. As the ALJ determined that the plaintiff also meets the 12.04A criteria, the court concludes that the plaintiff's impairment qualifies under the Listings and is disabled on the basis of the medical facts alone. SSR 86-8 at *3.

### 5.  Plaintiff's Onset Date of Disability Is January 20, 2004

The Appeals Council granted the plaintiff Social Security Insurance benefits beginning July 18, 2007. (Pl.'s Memo. 2.) Evidence on the record reveals that plaintiff's onset date of disability is earlier than July 2007.

17 - REPORT AND RECOMMENDATION

"The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20 at *1. Several factors are relevant to determining this date when disabilities of non-traumatic origin are claimed, including the individual's allegations, the work history, and the medical evidence. The individual's allegations and the work history should be consistent with the severity of the conditions shown by the medical evidence. Id. at *1-2. With progressive impairments, it may be difficult to obtain medical evidence to establish the precise date the impairment became disabling. It may be "necessary to infer the onset date from the medical and other evidence that describe the history and symptomology of the disease process. . . . it is not necessary for an impairment to have reached listing severity . . . before onset can be established." Id. at *2. "The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful activity] . . . . Convincing rationale must be given for the date selected." Id. at *3.

When mental illness is a basis for disability, there are different requirements for medical evidence to support a finding of disability. "[C]linical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. App. 1989).

Plaintiff first applied for disability on October 28, 2003 alleging an onset date of August 25, 2001. His primary claims for disability lay in physical impairments. As stated above, however, this court finds that he is disabled based on his mental illness impairments because he does meet the Listing criteria for mental disorders. Because the October application did not allege significant

symptoms for his mental health impairment, it is necessary to determine an onset date by which the plaintiff was "sufficiently impaired."

In his January 20, 2004 Reconsideration Disability Report, plaintiff first reported his depression. (Tr. 220.) The mental health impairments developed in severity over the past several years. Initially, the plaintiff only reported physical impairments on his first application for disability. He began noting depression upon filing for reconsideration in 2004 and later on appeal in April of 2004. (Tr. 220.) At that point, his medical professionals had taken notice.

Plaintiff's medical history, allegations, and work history support an onset date of at least the date of reconsideration, January 20, 2004. Dr. Donohoe began treating plaintiff in 2004, shortly after plaintiff began seeking treatment at Old Town Clinic. (Tr. 338.) Dr. Donohoe reported as early as February 3, 2004 that the plaintiff "was complaining of depression which is long-standing but worse over the last few months with anhedonia, fatigue, financial and family problems, and finds himself tearful on many occasions but states that he 'holds things in.'" (Tr. 335.) Not long after that, in medical records from May 14, 2004, Dr. Donohoe remarked that he believed plaintiff qualified for disability. (Tr. 319.) The full extent of his limited social functioning and restriction of pace and concentration also appears in his hearing testimony in late 2005 and 2006. In those hearings, the plaintiff is repeatedly tearful and unable to concentrate. The judge even notes his inability to answer questions and takes the hearing off the record to allow the plaintiff to compose himself. (Tr. 485.) He describes his only friends, self-created skulls. Several other medical providers documented this behavior, as described throughout this opinion. From this evidence, it is clear that the plaintiff's mental impairments met the Listing criteria before the July 2007 decision to give him SSI as of that date.

19 - REPORT AND RECOMMENDATION

Plaintiff's work history also supports an onset date of at least January 2004. Plaintiff's last job was in December 2001, but even before then he has had difficulty maintaining employment, due in part to his mental illness. Dr. Olbrich suggested that his sporadic work history evidences his greater mental illness problems. As noted previously, Dr. Olbrich concluded that the plaintiff is significantly disabled by his mental and emotional condition. "His history of employment since 1992 with 13 jobs, all of which have been of relative short duration is revealing in that it would appear that his symptoms of depression and anxiety have been significant in causing the loss of most of these jobs." (Tr. 355.)

The plaintiff's allegations of his disability, his medical records, and his work history support an onset date of disability prior to the July 2007 date upon which disability has been granted. As te plaintiff first alleged depressive symptoms on his Reconsideration Disability Report on January 20, 2004 and doctor's reports correspond to support these symptoms, the court believes that the plaintiff is disabled and thus an onset date should be set on this date, January 20, 2004.

//

//

//

## Conclusion

The ALJ abused his discretion in finding plaintiff was not disabled. When doctor's testimony and plaintiff's testimony are properly credited, plaintiff meets the criteria for the Listings and is accordingly disabled per se. Plaintiff's onset date is set for the January 20, 2004 date on which he filed his Reconsideration Disability Report as this report is one of the first instances in which he alleges his disability and these allegations are supported by similar medical evidence at the time.

20 - REPORT AND RECOMMENDATION

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be reversed and the matter remanded for benefits.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals* . Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by December 22, 2008. If objections are filed, any responses to the objections are due within 10 days* , *see* Federal Rules of Civil Procedure 72 and 6. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___5___ day of December, 2008.

MARK D. CLARKE

United States Magistrate Judge

21 - REPORT AND RECOMMENDATION